IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

REBECCA W.,

               Plaintiff,

       v.                                                                 Civil Action No.
                                           3:24-CV-587 (DEP)

FRANK BISIGNANO,
Commissioner of Social Security,[1]

               Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM        PETER A. GORTON, ESQ.
P.O. Box 89, 1500 East Main Street
Endicott, NY 13760-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    FERGUS KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

---

[1]     Plaintiff's complaint named Martin O'Malley, in his official capacity as the Commissioner of Social Security, as the defendant. On May 18, 2025, Frank Bisignano took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g). The clerk is respectfully directed to amend the court's records to reflect this change.

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of a partially unfavorable administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[2]  Oral argument was heard in connection with those motions on June 12, 2025, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that the plaintiff was not disabled at certain relevant times, and thus is not entitled to benefits under the Social Security Act for that period, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:    June 25, 2025
          Syracuse, NY

3

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
REBECCA W.,

                          Plaintiff,

vs.                             3:24-CV-587

FRANK BISIGNANO, COMMISSIONER OF
SOCIAL SECURITY,

                          Defendant.

-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on June 12, 2025, the

HONORABLE DAVID E. PEEBLES, United States

Magistrate Judge, Presiding.


                A P P E A R A N C E S

              (By Telephone)

For Plaintiff:      LACHMAN, GORTON LAW FIRM
                    P.O. Box 89
                    1500 East Main Street
                    Endicott, New York  13760-0089
                      BY:  PETER A. GORTON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Program Litigation, Office 2
                    6401 Security Boulevard
                    Baltimore, Maryland  21235
                      BY:  FERGUS J. KAISER, ESQ.


            *Jodi L. Hibbard, RMR, CSR, CRR*
          *Official United States Court Reporter*
              *100 South Clinton Street*
            *Syracuse, New York  13261-7367*
                  *(315) 234-8547*

1              (The Court and counsel present by telephone.)

2         THE COURT:  All right.  Let me begin by thanking

3    both counsel, I found this case to be interesting from both a

4    factual and a legal perspective.

5         Before I address the merits, I did want to broach

6    the subject of consent.  When this case was originally filed,

7    it was assigned to Magistrate Judge Miroslav Lovric, one of

8    my colleagues.  It has since been transferred to me.  The

9    consent form that was signed by Attorney Gorton on behalf of

10   his client specifically consented to the jurisdiction of

11   Magistrate Judge Lovric and so I will ask, can you confirm,

12   Mr. Gorton, that your client consents to my hearing and

13   deciding this case with direct appeal to the Second Circuit?

14        MR. GORTON:  I confirm.

15        THE COURT:  Thank you.  Plaintiff has commenced

16   this action pursuant to 42 United States Code Section 405(g)

17   to challenge an adverse determination by the Commissioner of

18   Social Security finding that she was not disabled at the

19   relevant times and therefore ineligible for the benefits for

20   which she applied.

21        The background is as follows:  Plaintiff was born

22   in October of 1974, she's currently 50 years of age.  She

23   stands 5 foot 1 inch in height and weighs approximately

24   191 pounds.  She lives in Endwell, New York with her husband

25   and two daughters who in 2023 were ages 14 and 16.  Plaintiff

1    has a college degree in sociology.  While in school she was

2    in regular classes.  Plaintiff has a driver's license and can

3    drive.  Plaintiff stopped working in August of 2021.  When

4    she worked, she worked as a sales associate, restaurant

5    server, a substitute teacher, and a teacher's aide.  Since

6    June 30, 2021, during the school years, plaintiff has worked

7    part time, approximately two to three days per week, as a

8    substitute teacher and a substitute teacher's aide.

9           Plaintiff suffers from irritable bowel syndrome,

10   exocrine pancreatic insufficiency which I will call EPI so

11   that I don't have to try to pronounce it again, obesity,

12   gastroesophageal reflux disease, or GERD, G-E-R-D.

13          Mentally, the plaintiff has been diagnosed as

14   suffering from conditions that have been variously described

15   as anxiety or general anxiety disorder, panic disorder, major

16   depressive disorder, medical withdrawal in remission,

17   specifically addressing Topamax and Xanax.  She also claims,

18   and the licensed clinical social worker that she sees has

19   also opined, that she may suffer from post-traumatic stress

20   disorder, or PTSD.  Upstate Psychiatric notes also indicate

21   borderline personality disorder and attention-deficit and

22   hyperactivity disorder.  The plaintiff has stated that her

23   mental condition is under control with medication, that's at

24   page 34.

25          Plaintiff's activities of daily living include the

1    ability to groom, clean, do laundry, cook, do some shopping,

2    socialize with friends and family.  She uses social media,

3    she watches television, listens to the radio, she reads, she

4    goes out to dinner, she walks, exercises, she enjoys boating

5    and going to the beach.  That's indicated at page 504 and

6    other points in the record as well.

7            Procedurally, plaintiff applied for Title II

8    benefits on October 28, 2021, alleging an onset date of

9    January 1, 2020 which was later amended to June 30, 2021.  At

10   page 214 she claims disability based on anxiety, depression,

11   PTSD, OCD, drug withdrawal, IBS, GERD, and acid reflux.  The

12   plaintiff later at the hearing, that's at page 31 and 32 of

13   the Administrative Transcript, stated she cannot work due to

14   extreme pancreatic insufficiency and IBS and that no other

15   condition contributes to her disability, and she amplified by

16   saying that she simply spends too much time in the restroom,

17   that's at page 33, and would therefore be away from work and

18   off task.

19           A hearing was conducted on August 7, 2023 by

20   Administrative Law Judge Jeremy Eldred to address plaintiff's

21   claim for benefits.  A vocational expert testified at that

22   hearing.  On August 29, 2023, ALJ Eldred issued an

23   unfavorable decision which became a final determination of

24   the Agency on March 12, 2024 when the Social Security Appeals

25   Council denied plaintiff's request for review.  This action

1   was commenced on April 30, 2024, and is timely.

2          In his decision, ALJ Eldred applied the familiar

3   five-step sequential test for determining disability.  He

4   first noted that plaintiff is insured through March 31, 2027

5   for benefits.

6          At step one, he concluded plaintiff had not engaged

7   in substantial gainful activity since June 30, 2021, but did

8   acknowledge that she does work part time as a substitute

9   teacher and substitute teacher aide, although it does not

10  rise to a level of substantial gainful employment.

11         At step two, he concluded that plaintiff does

12  suffer from severe impairments that impose more than minimal

13  limitations on her ability to perform basic work activities,

14  including IBS and pancreatic insufficiency and obesity.

15         At step three, he concluded, however, that those

16  conditions do not meet or medically equal any of the listed

17  presumptively disabling conditions set forth in the

18  regulations, specifically considering Listings 5.00, 9.00, as

19  well as Social Security Ruling 19-2p which addresses obesity.

20  The ALJ then, based on the entirety of the record, concluded

21  that notwithstanding her conditions, plaintiff retains the

22  residual functional capacity, or RFC, to perform a full range

23  of light work as defined in the regulations.

24         At step four, applying that RFC, the administrative

25  law judge concluded that plaintiff is capable of performing

1     her past relevant work as a teacher aide and therefore did

2     not progress to step five of the sequential test.

3            As you know, the court's function in this case is

4     limited to determining whether substantial evidence supports

5     the Commissioner's determination and correct legal principles

6     were applied.  Substantial evidence of course is defined as

7     such relevant evidence as a reasonable person would find

8     sufficient to support a conclusion.  The Second Circuit has

9     spoken to the test and its rigor, including in *Brault v.*

10    *Social Security Administration Commissioner*, 683 F.3d 443

11    from 2012, and *Schillo v. Kijakazi*, 31 F.4th 64, that's from

12    2022 from the Second Circuit.

13           In this case, plaintiff raises a couple of

14    contentions, I've lumped them, grouped them into four.

15           The first alleges an error in the residual

16    functional capacity finding and specifically the fact that it

17    does not include any limitations related to plaintiff's

18    gastro problems and need to use the bathroom, and as a

19    subcategory plaintiff argues that that results from error in

20    evaluating the medical opinions of record.

21           Secondly, the plaintiff argues that it was not

22    proper to rely on the prior administrative medical findings

23    which concluded that plaintiff's mental condition is not

24    severe because it speaks to a matter alleged -- allegedly

25    reserved to the Commissioner.

1       The third argument is that plaintiff's mental

2  impairment should have been considered severe at step two of

3  the sequential evaluation.

4       And the fourth argument, which I don't understand,

5  is that the errors affect the step five finding because there

6  was no step five finding.

7       Turning to the step two argument, it is true that

8  at step two, a claimant need only show that he or she has a

9  medically determinable impairment that rises to the level of

10  severity.  The threshold of severity is met when the

11  condition significantly limits the physical or mental ability

12  of the claimant to perform basic work activities, which

13  include the ability to engage in exertional functions, see,

14  hear or speak, understand, remember and carry out simple

15  instructions, use judgment, respond appropriately to

16  supervision, coworkers and usual work situations, and deal

17  with changes in a routine work setting.  20 C.F.R. Section

18  404.1522.

19       The requirement to establish a severe impairment at

20  step two admittedly is *de minimus* and is intended only to

21  screen out the weakest of cases.  However, the mere presence

22  of a disease or impairment for establishing that a person has

23  been diagnosed or treated for a disease or impairment is not

24  by itself sufficient to render a condition severe.

25       The administrative law judge considered plaintiff's

1    mental conditions and engaged in an analysis of the so-called

2    B and C criteria of the regulations and specifically found

3    mild limitation in all four of the prescribed domains.  In my

4    view, that determination is supported by substantial

5    evidence.

6            The record includes the consultative evaluation of

7    Dr. Sara Long dated January 20, 2022, that's at 502 to 505 of

8    the Administrative Transcript.  Based upon her consultative

9    examination, Dr. Long wrote the following:  For appearance,

10   plaintiff was neat and well groomed.  Posture and motor

11   behavior were normal.  Eye contact was appropriate.  For

12   speech, speech was fluent and clear with adequate receptive

13   and expressive language.  Thought processes, throughout the

14   evaluation, she was coherent and goal directed.  There was no

15   indication of any sensory or thought disorder.  Affect, she

16   displayed a full range of appropriate affect in speech and

17   thought content.  She reports PTSD, however, what she reports

18   does not appear to meet that criteria.  For mood, euthymic.

19   Sensorium, clear.  Orientation, intact.  Attention and

20   concentration, intact.  Recent and remote memory skills,

21   intact.  Cognitive functioning, Ms. [W.] appears to be

22   functioning on an average intellectual level with a good fund

23   of information.  Insight, fair.  Judgment, fair.

24           In the medical source statement, Dr. Long found no

25   limitations with the exception of mild limitations regarding

1    regulating emotions.

2          The prior administrative findings of Dr. M. Woogen,

3    that was dated March 14, 2022, it's in Exhibit 2A, and Dr. M.

4    Juriga from June 6, 2022, 3A, found no severe mental

5    impairment.

6          The administrative law judge also noted that

7    plaintiff is currently working as a substitute teacher and

8    substitute teacher aide two to three times a week.

9    Plaintiff's hearing testimony, specifically pages 33 and 34

10   which I mentioned earlier, support the determination, and

11   plaintiff has not engaged in any psychiatric hospitalization.

12         The administrative law judge rejected an opinion

13   from Licensed Clinical Social Worker Nicole Babcock who

14   issued a questionnaire on January 25, 2023, it appears at 553

15   to 555 of the Administrative Transcript.

16         When it comes to considering opinion evidence, this

17   case is subject to the regulations which took effect for

18   claims filed after March 27, 2017, as are set forth in 20

19   C.F.R. Section 404.1520(c).  They require consideration of

20   several factors including, most notably, whether the opinions

21   are supported by and consistent with the record in the case,

22   and under the regulations and case law, an ALJ must

23   articulate in his or her determination how persuasive he or

24   she finds all of the medical opinions and explain how he or

25   she considered the factors of supportability and consistency

1    in a manner which will permit meaningful judicial review.

2              In this case, as I indicated previously, or maybe I

3    didn't, the administrative law judge found Dr. Woogen,

4    Dr. Juriga, and Dr. Long's opinions persuasive at page 17.

5    And I find that that determination is supported by

6    substantial evidence and does not run afoul of the

7    regulations.

8              In terms of the opinion of the licensed clinical

9    social worker, the administrative law judge discussed that

10   opinion at pages 17 and 18 of the record and gave the

11   following reasons for not finding it persuasive.  One, it

12   does not express a clear opinion regarding the claimant's

13   mental functions over a continuous period of 12 months; two,

14   it cites no mental status examination findings to support her

15   opinion; three, a review of the underlying treatment records

16   do not support a continuous 12-month period of significant

17   mental limitations; and four, the assessment is inconsistent

18   with the opinions of Dr. Woogen, Dr. Juriga, and Dr. Long.

19             I've looked carefully at the opinion and it doesn't

20   appear to be very helpful.  It essentially, without much

21   commentary, indicates a range in each of the specified

22   categories which ranges from none/mild at plaintiff's highest

23   current level, or highest at some instances, to extreme in

24   the lowest and it doesn't really articulate during what

25   periods those apply.  In my view, the questionnaire is

1    totally unhelpful and I also agree, it's not supported by the

2    record and is inconsistent with the other medical opinions of

3    record.

4           So I find no error in the rejection of that opinion

5    and I find that the step two determination that plaintiff

6    does not suffer from a severe mental impairment that imposes

7    more than minimal limitations on her ability to perform basic

8    work functions is supported by substantial evidence.

9           The second argument regarding the prior

10   administrative medical findings is interesting.  As I

11   understand it, Dr. Woogen and Dr. Juriga found no severe

12   mental impairment, and the administrative law judge found

13   that to be persuasive.  If I understand the argument, because

14   that is essentially dispositive of the issue of disability,

15   at least from the mental point of view, it speaks to a matter

16   under the regulations that is reserved to the Commissioner.

17   It's my -- Dr. B. Stouter at page 52 found no physical

18   impairment, Dr. A. Vinluan, 59, also and the administrative

19   law judge, page 18, rejected that and gave plaintiff the

20   benefit of the doubt and found severe physical impairment.

21   It's clear that prior administrative findings can provide

22   substantial evidence to support a determination,

23   *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761 from the Second

24   Circuit 2023.  And there are many other cases that say

25   likewise.

1             In this case, the argument raised is fascinating.

2     It has not to my knowledge been accepted by any court.  It

3     was discussed and, after a lengthy analysis, it was rejected

4     by my colleague, former colleague, now-retired Magistrate

5     Judge Christian F. Hummel in *Loni S. v. Commissioner of*

6     *Social Security*, 2023 WL 4195887 from the Northern District

7     of New York, June 27, 2023.  The case was also followed in

8     another jurisdiction in *Bagdasarian v. O'Malley*, 2024 WL

9     3430565 from the District of Massachusetts, 2024.  I will

10    simplify by simply saying that Magistrate Judge Hummel did a

11    thorough analysis and found, based on the consideration of

12    the POMS as well as the relevant regulations, that the

13    specialists who issued prior administrative medical findings

14    are part of the Commissioner's designated team and therefore

15    the prohibition against speaking to matters reserved to the

16    Commissioner does not extend to prior administrative medical

17    findings and I agree with Magistrate Judge Hummel's analysis.

18    And so I reject that argument.  I do not find any error in

19    relying upon the prior administrative medical findings.

20            The interesting, most interesting factual issue

21    here is residual functional capacity and whether it should

22    have included any limitations based on plaintiff's gastro

23    condition and her need to use the bathroom often and

24    sometimes on an urgent basis.  A claimant's RFC represents

25    the finding of a range of tasks that claimant is capable of

1    performing notwithstanding his or her impairments, 20 C.F.R.

2    Section 404.1545(a).  Ordinarily that means a claimant's

3    maximum ability to perform sustained work activities in an

4    ordinary setting on a regular and continuing basis, meaning

5    eight hours a day for five days a week or an equivalent

6    schedule.  *Tankisi v. Commissioner of Social Security*, 521

7    F.App'x 29 at 33, Second Circuit 2013.  An RFC determination

8    is informed by consideration of all of the claimant's

9    physical and mental abilities, symptomology, and other

10   limitations that could interfere with performance of basic

11   work activities.

12          The backdrop to this argument is twofold.  First,

13   it is the plaintiff's burden through step four to establish

14   her limitations on the ability to perform basic work

15   functions.  *Poupore v. Astrue*, 566 F.3d 303, Second Circuit

16   2009.  Secondly, the mere fact of a diagnosis and/or

17   treatment for a medical condition does not mean automatically

18   that there are limitations associated with that condition on

19   the ability to perform basic work functions.

20          As plaintiff has argued, Dr. Jagraj Rai has issued

21   an opinion on a questionnaire form dated July 28, 2023, 642

22   and 643 of the Administrative Transcript.  Dr. Rai, as I

23   understand it, is the plaintiff's primary physician, not the

24   gastroenterologist that plaintiff has also seen.  And he

25   answers questions as follows:  Medical conditions suffered by

24

1   the claimant would require unlimited access to the bathroom.

2   Yes.  The need to use the bathroom would be urgent and

3   immediate.  Yes.  And it specifies that the condition has

4   prevailed over the last two years.  Very little explanation

5   given.  It's basically a check-box form, which is not always

6   the most helpful when it is not accompanied by explanation.

7   The administrative law judge reviewed that and found that

8   opinion not to be persuasive.  It is discussed at page 18 of

9   the Administrative Transcript.  The reasons provided are the

10  following:  He is not claimant's gastroenterologist, the

11  medical records do not document disabling gastrointestinal

12  impairments, and the opinion is inconsistent with the

13  information in the gastroenterological records as discussed

14  above, and there was a healthy discussion of those records in

15  the administrative law judge's decision.

16        I find that that rejection is supported by

17  substantial evidence.  I have reviewed the medical records

18  extremely carefully.  As a backdrop, I note any RFC

19  limitation must meet the 12-month durational requirement of

20  20 C.F.R. Section 404.1509 and 42 United States Code Section

21  423(d)(3).  *James K.W. v. Commissioner of Social Security*,

22  2024 WL 1622019, Western District of New York, April 15,

23  2024.  That case cites *Barnhart v. Walton*, 535 U.S. 212 from

24  2002.

25        I have reviewed the records and made a timeline

1     which shows essentially three discrete flare-ups of this

2     plaintiff's condition from March 13, 2020 through June 13,

3     2023 based on the available records of Lourdes

4     Gastrointestinal, and those are at 3F, 5F, and 11F, and

5     Lourdes Vestal Internal Medicine, 10F.  I also reviewed the

6     record of plaintiff's emergency room visit complaining of

7     diarrhea that's at 13F.

8            I found that there were some periods, for example,

9     from January 5, 2021, that's at page 492 of the record, IBS

10    not well controlled with current medications, and as that

11    went along, there was instances of diarrhea.  Prior to that

12    time, there was a denial of any diarrhea on March 13, 2020

13    that's at 556; July 24, 2020, that's at 560; October 29,

14    2020, that's at 565.  As the timeline goes on, on April 21,

15    2021, at 484, plaintiff indicates more frequent bowel

16    movements when forgetting to take Metamucil.  There is an

17    indication of plaintiff being taken out of work for I think

18    three days in April of 2021 due to a flare-up in IBS.  By

19    November 24, 2021 however, plaintiff indicated feeling

20    better.  Bowel movements three to four times per week with

21    medications.  I also note that on November 20, 2021, that's

22    at 583, plaintiff denied experiencing diarrhea.

23           There appears to be a second period, January 24,

24    2021, diarrhea over the past 19 days, four to six times per

25    day.  That's at 588 and 591.  There was an emergency room

1   visit, 2/7/22, diarrhea five times per day for one-and-a-half

2   months, that's at 650.  By February 11, 2021, that's at 511,

3   plaintiff was stable.  November 21, not mentioned, diarrhea

4   not mentioned.  March 11, 2021, some improvement, down to

5   four times per day.  April 14, 2022 at 595, no mention of

6   diarrhea.  5/31/2022, that's at 611, no diarrhea.  5/15/2022,

7   that's at 607, no mention.  October 12, 2021, no mention of

8   diarrhea, that's at 616.  At -- but June 16, 2021 -- 2022,

9   diarrhea four to eight times per day, that's at 626.  By

10  December 8, 2021, feeling good from GI perspective, symptoms

11  manageable, that's at 630 to 633.

12        So what I see is possibly three discrete times when

13  she had flare-ups, some of which were due to -- were before

14  she went on Metamucil, and forgetting to take her medication,

15  but there were a lot of instances where she denied diarrhea.

16  January 24, 2021, for example, significant diarrhea

17  attributed to discontinuance of psychiatric medications and

18  she was told to use Imodium and Haikou Cimino.

19        So in conclusion, I agree with the determination of

20  the administrative law judge that there was no limitation on

21  plaintiff's ability to perform basic work functions that

22  extended over a 12-month continuous period.  I'll note that

23  the administrative law judge, in addition to these records,

24  also considered plaintiff's ability to work part time two to

25  three times per week as a part-time substitute aide and

1    substitute teacher, and also her robust administrative --

2    activities of daily living which are properly considered and

3    were very extensive, including boating and going to the

4    beach.

5            Accordingly, I find that plaintiff failed to prove

6    limitations resulting from her IBS and gastro issues present

7    for a continuous period of 12 months requiring inclusion in

8    the RFC.

9            So in sum, I find correct legal principles were

10   applied, the resulting determination is supported by

11   substantial evidence.  I'll grant judgment on the pleadings

12   to the defendant and order dismissal of plaintiff's

13   complaint.

14           Thank you all for excellent presentations.  Enjoy

15   the rest of the day.

16           MR. GORTON:  Thank you, your Honor.

17           MR. KAISER:  Thank you, your Honor.

18               (Proceedings Adjourned, 12:02 p.m.)

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RMR, CRR, CSR, Federal

5    Official Realtime Court Reporter, in and for the

6    United States District Court for the Northern

7    District of New York, DO HEREBY CERTIFY that

8    pursuant to Section 753, Title 28, United States

9    Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                    Dated this 13th day of June, 2025.

17

18

19                    /S/ JODI L. HIBBARD
                      _____

20                    JODI L. HIBBARD, RMR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25

JODI L. HIBBARD, RMR, CRR, CSR
(315) 234-8547